MICHAEL J. CONNOLLY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Connolly v. Commissioner
Docket No. 25457-92
United States Tax Court
T.C. Memo 1994-218; 1994 Tax Ct. Memo LEXIS 219; 67 T.C.M. (CCH) 2973; May 17, 1994, Filed; As Corrected May 18, 1994 *219 For petitioner: Raymond E. McCain, Jr.
For respondent: Roberta L. Shumway. ARMEN
ARMEN
MEMORANDUM OPINION ARMEN, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
For the years 1987 and 1988 respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows: Additions to Tax
Sec.
Sec. Sec. Sec.
Year
Deficiency
6651(a)(1)
6653(a)(1)(A)
6653(a)(1)(B)
6653(a)(1)
1987
$ 4,625
$ 992.25
$ 473.70
n1 -- 1988
2,683
-- -- --
$ 134.15
1 50 percent of the interest due on $ 4,625.
After concessions by both parties, [2] the issues for decision are: (1) Whether petitioner engaged in tournament fishing during 1987 and 1988 with an actual and honest profit objective; (2) whether *220 petitioner has substantiated deductions claimed for interest, insurance, and depreciation; and (3) whether petitioner is liable for additions to tax for negligence or disregard of rules and regulations. Some of the facts have been stipulated, and they are so found. At the time the petition was filed in this case, petitioner resided in Montgomery, Texas. During 1987 and 1988, petitioner was employed full time by Beck & MastenPontiac (the shop), in Houston. He held the titles of assistant service manager and paint and body shop foreman. Petitioner had no formal training as a mechanic or a manager, [3] but nonetheless advanced to a supervisory position. In 1987 and 1988 he received wage income in the amounts of $ 42,019.91 and $ 42,774.77, respectively. Exclusive of the fishing income discussed below, petitioner had no other source of income during the years in issue. *221 Petitioner derived gross income in 1987 and 1988 from his tournament fishing activity (hereinafter sometimes referred to as the activity) in the amounts of $ 971 and $ 1,039, respectively. However, he reported net losses from the tournament activity during those years in the amounts of $ 12,228 and $ 8,034. Petitioner began fishing in tournaments on a recreational basis in 1972, approximately 5 years after tournament fishing first began and well after he had begun fishing as a hobby. Petitioner has had no formal training in either fishing or boating. He enjoyed tournament fishing, although it was time-consuming and both mentally and physically demanding. [4]
On December 18, 1984, petitioner obtained a loan from Antoine Bank (Antoine) to pay for the purchase of a 1985 Ranger bass boat (the boat), on which Antoine reserved a lien. The cost of the boat was $ 13,500. Subsequently, Fallbrook National Bank (Fallbrook) *222 took over the loan as well as Antoine's lien on the boat. On October 17, 1985, petitioner used the proceeds of a loan from Fallbrook to repair the boat's engine. Later, petitioner traded the boat for a 1987 boat. Petitioner began reporting income and expenses [5] related to his tournament fishing activity on Schedule C when he filed an amended income tax return for 1985 in November 1987. Since then, petitioner has reported Schedule C income and deductions from his fishing activity as follows: Year
Gross Income
Deductions
Net Loss
1985
$ 224
$ 7,736
($ 7,512)
1986
126
13,214
(13,088)
1987
971
13,199
(12,228)
1988
1,039
9,073
(8,034)
1989
1,145
7,804
(6,659)
1990
[1] ---
1,351
(1,351)
1991
---
2,114
(2,114)
In 1985, petitioner attempted to obtain sponsors by increasing his own visibility and using the products *223 of the companies whom he hoped to obtain as sponsors. He continued his efforts to obtain sponsors during the years in issue. The term "tournament fishing" encompasses several different levels of competition. As a competitor advances from one level to the next, his or her expenses typically increase. The value of the available prizes also increases, but not always in proportion to the increase in expenses. The first level of competition is through bass clubs. Participation in bass club tournaments does not require an entry fee, and the prizes are generally limited to plaques or trophies. At the next level of competition, the "tournament level", the entry fees ranged from $ 50 to $ 200, and the first-place prize was generally about $ 1,000 during the years in issue. The amounts of other prizes depended on the number of competitors in the tournament. Often, competitors would fish in pairs at this level. The next level of competition is the "serious tournament" level. Approximately 30 percent of those who compete in tournament fishing compete at this level. Manufacturers view those competing at this level as potential promoters of the manufacturers' products. Manufacturers *224 also view these competitors, as well as the "tournament level" competitors, as comprising a significant part of their market, and design their promotions to appeal to them. The next level, which represents quite a leap, is the semi-professional level. It is generally at this level that a competitor receives sponsorship benefits in the form of money, products, and discounts. Semiprofessionals are often expected to attend charity events to represent their sponsors. Petitioner participated in at least one charity event. [6]
The top level of competition is the professional level. At this level, competitors generally do not hold other full-time employment. Those competing at the professional level have the opportunity to earn significant sums through their fishing and related activities. Professionals' income is derived from a variety of sources, including prize money and sponsorship. Professionals often compete in invitational tournaments, *225 which offer first-place prizes of approximately $ 100,000. Professionals also compete in "pro-draw" circuits, which have entry fees between $ 500 and $ 1,500. Petitioner entered some of these competitions, but was unable to compete regularly in these circuits because, in the absence of financial support from sponsors, his resources did not permit him to do so. When he began tournament fishing in 1972, petitioner was competing "at the bottom of the club level." To develop his skill as a competitive fisherman, petitioner pre-fished [7] lakes where tournaments were to be held and spoke with other competitors, particularly those who previously had greater competitive success to gain insights from their experiences. By 1987, other competitors would approach petitioner in an effort to gain similar insights from him. Between 1972 and 1985, petitioner won several club championships. During *226 that time, he fished around the country, in Texas, Florida, Oklahoma, Arkansas, Kentucky, Tennessee, and Georgia. In 1985, petitioner focused his attention on tournaments in the Texas area. By the end of 1988, petitioner was competing at a level between "tournament fishing" and "serious tournament fishing." In order to engage in the tournaments in which petitioner competed during the years in issue, petitioner was obliged to obtain a valid Texas fishing license [8] and to pay tournament entry fees. He satisfied both obligations. Although he was certified as a guide [9] in other States, petitioner declined to obtain certification as a guide in Texas because acting as a guide would have limited the tournaments in which he could participate. Petitioner *227 engaged in tournament fishing and related activities primarily during the weekends. Much of petitioner's time during the weekends was devoted to such activity. In addition to the time spent actually competing, petitioner also maintained his fishing equipment (including his boat), [10] pre-fished, and promoted products of the manufacturers who were sponsoring him. During the years in issue, petitioner had a limited number of sponsors. Some were "partial sponsors" whom he was attempting to convert to full sponsorship. One of his partial sponsors was Ranger Boats. Petitioner appeared at boat shows on its behalf, assisted Ranger Boats customers whose boats were not operating properly to improve the performance *228 of their boats, and wore a Ranger Boats jacket or T-shirt at each tournament. Some of these jackets and T-shirts were provided by Ranger Boats and some petitioner purchased. In addition to some free clothing, petitioner also received other benefits from Ranger Boats, including expedited repairs on broken parts. At the full sponsorship level, Ranger Boats provides competitors with clothing and requires those competitors to wear the clothing at certain times and places. It also provides boats and gear, and pays entry fees. Other sponsors provide similar benefits to those whom they sponsor. The tournaments in which petitioner competed during the years in issue were primarily bass fishing tournaments. [11] These tournaments are often held on or around the weekends to accommodate the schedules of competitors who are employed full time in activities other than tournament fishing. Tournaments in which petitioner competed *229 offered first-place prizes ranging from $ 1,000 to $ 18,000. Some also offered a cash prize in excess of $ 1,000 to the participant who caught the biggest bass, also known as "the big bass". [12] During 1987, 1988, and 1989, petitioner competed in several tournament circuits. He often finished either fourth or fifth among the competitors in these tournaments. On at least one occasion, when fishing with a partner, petitioner won the prize for catching the big bass. In these same tournaments, some competitors did not catch any fish. Despite his successes in tournament fishing, petitioner never earned a profit from the activity. In fact, during the years he contends that he engaged in the activity with a profit objective, he recovered less than 15 percent of his expenses in any given year, and less than 7 percent of his cumulative expenses. In 1990, petitioner *230 reported no income from his fishing activity, although he had won at least $ 880 in one tournament. During that year, petitioner was obliged to work longer hours at the shop, which prevented him from competing in some tournaments. In addition to the constraints on his time, petitioner experienced problems with his boat. Specifically, his boat's engine exploded, which took at least a few months to repair. As a consequence of these and other problems, petitioner would have been unable to compete in enough tournaments in any circuit in order to qualify to compete in a "classic". Classics are essentially annual final tournaments which require that competitors have achieved a certain standing in circuit competitions throughout the year. Classics offer larger prizes than the tournaments held throughout the year. In 1991, petitioner suffered from several medical problems. First, in January 1991, he was admitted to an emergency room with broken bones in his hand, a condition which required surgery and ongoing physical therapy until May 1991. Also in May 1991, petitioner contracted pneumonia, a condition which required hospitalization for several days and subsequent treatment on an *231 outpatient basis. During his stay in the hospital, petitioner required supplemental oxygen. One year later he still experienced shortness of breath. These medical problems have severely restricted petitioner's ability to fish competitively. Despite the constraints on his ability to compete in 1990 and 1991, petitioner continued to claim the expenses of tournament fishing as Schedule C expenses during those years. Respondent determined that petitioner's tournament fishing activity was not engaged in with an actual and honest profit objective and disallowed the expenses from that activity which petitioner had claimed on his income tax returns for 1987 and 1988. Respondent also determined that petitioner failed to substantiate the expenses he had claimed. [13]
Petitioner's Profit Objective
As a general rule, the Commissioner's determinations are presumed correct, and the taxpayer bears *232 the burden of proving that the determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). In order to sustain his burden in this case, petitioner is obliged to show that he engaged in his tournament fishing activity with an actual and honest objective of earning a profit. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). The existence of the requisite profit objective is a question of fact which must be determined on the basis of the entire record. Benz v. Commissioner, 63 T.C. 375, 382 (1974). In resolving this factual question, greater weight is accorded objective facts than a taxpayer's statement of intent. See sec. 1.183-2(a), Income Tax Regs. For purposes of determining whether petitioner had the requisite profit objective, profit means economic profit, independent of tax savings. Surloff v. Commissioner, 81 T.C. 210, 233 (1983). The regulations set forth a nonexhaustive list of factors which may be considered in deciding whether a profit *233 objective exists. These factors are: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) any elements indicating personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs.
No single factor, nor even the existence of a majority of factors favoring or disfavoring the existence of a profit objective, is controlling. Id. Rather, the relevant facts and circumstances of the case are determinative. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). In the present case there are some facts and circumstances which favor petitioner's position. On balance, however, we *234 are not convinced that petitioner engaged in the tournament fishing activity with the requisite profit objective during the taxable years in issue. [14]
We look first to the manner in which petitioner carried on the activity. As part of our consideration, we note the success which petitioner had in advancing professionally in his full-time position. As an individual who had the skills necessary to advance to a managerial level, we believe petitioner was, or should have been, sufficiently familiar with business practices to allow him to conduct the tournament fishing activity in a manner evidencing a profit objective had he had one. Instead, the manner in which he carried on the activity suggests that he was a recreational tournament fisherman, albeit an accomplished one. One indication that petitioner *235 never had the requisite profit objective is that, by his own admission, the only time he appears to have considered the costs and risks associated with the fishing activity was when he began to enter tournaments. He did not, in anticipation of converting the activity from a recreational one to one with a professed profit objective, develop a profit schedule or consider methods by which he could change his approach to enhance his chances for earning a profit. Petitioner testified that he had determined that by winning a single tournament, he could have earned a profit for the year in which he won. However, the ultimate goal of an activity engaged in for profit must be to realize a net profit on the activity so as to recoup losses sustained in prior years. Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967). Petitioner never made a bona fide effort to assess his chances of recouping his cumulative expenses. Moreover, although he did maintain receipts of some expenses incurred and did identify fishing-related expenses on receipts which included expenses not related to the tournament fishing *236 activity, petitioner did not maintain books and records that would have allowed him easily to analyze his progress, or lack thereof, towards profitability. Additionally, although he was conscientious about maintaining records of his expenditures, it would appear that he was less methodical about reflecting income. In at least one instance, in 1990, [15] $ 880 that petitioner had won was not reported as income on his tax return, although by including it he would have diminished his reported loss by more than half. [16]
One final observation with respect to the manner in which the activity was carried on: Although petitioner consulted with other competitors in an effort to improve his skills, he did not seek third-party advice on how to achieve profitability. *237 In fact, we believe that petitioner's actions reflect the fact that he was a competitor who wished merely to improve his fishing skills. Based on the above, this factor disfavors petitioner's assertion of a profit objective. See sec. 1.183-2(b)(1), Income Tax Regs.
With respect to the issue of expertise, we believe that petitioner is a skilled tournament fisherman who has made consistent efforts to improve his skills over the years. We observe, however, that over the years, instead of consulting with more experienced competitors, petitioner has become an adviser to less experienced competitors. While this confirms his status as a skilled competitor, it undermines his claim that he had a profit objective. Had he had a profit objective, as opposed to a sincere desire to win, he would likely have sought advice from those who had succeeded in earning a profit. This factor also favors respondent. See sec. 1.183-2(b)(2), Income Tax Regs.
During the years in issue petitioner devoted much of his free time to the tournament fishing activity. He spent almost every weekend either pre-fishing or fishing in tournaments. This might tend to favor petitioner's position. However, we observe *238 that most of the bass fishing tournaments in which petitioner was eligible to compete were in fact held during the weekends to accommodate those with full-time jobs. This fact suggests that the organizers viewed noninvitational tournament fishing as primarily a weekend activity. We recognize that an activity that is primarily a weekend activity may be engaged in with an actual and honest profit objective. However, we note that those individuals with the most opportunity to earn a profit are those who engage in the activity on a full-time basis and fish in professional tournaments. While petitioner indicated that he was seeking sponsors in an effort to fulfill his goal of becoming a professional, during the years in issue he had not yet completed even the transition from serious tournament competitor to semi-professional competitor. Moreover, he had not consulted with others who had made the transition as to how they had moved towards profitability. Thus, while we believe that petitioner devoted as much time as he could afford to the activity, we question whether the time so devoted was geared towards achieving a profit objective or towards improving his competitive skills and *239 reducing his costs through the sponsorship mechanism. See sec. 1.183-2(b)(3), Income Tax Regs.
Petitioner's lack of financial success and his failure to earn even an occasional profit militate against a profit-objective conclusion. We do not ignore the fact that petitioner had begun to attract the notice of sponsors during the years in issue. However, the logical extension of petitioner's contention that he had a profit objective would be that every competitor who has shown any promise and who has the ambition to compete successfully would have a profit objective. While we admire those, including petitioner, who strive to succeed in a competitive arena, we are unwilling to take a step along the path of equating competitive desire with a profit objective. See sec. 1.183-2(b)(6) and (7), Income Tax Regs.
Tournament fishing was in its nascent period when petitioner became involved. Petitioner acknowledges that he fished and competed recreationally until 1985 and that he enjoys tournament fishing. As noted above, we applaud petitioner's ongoing pursuit of competitive excellence, but view it as the pursuit of victory, not the pursuit of profit. While the two are, of course, not *240 mutually exclusive, in this instance we are unable to reconcile the totality of the evidence with a profit objective. See sec. 1.183-2(b)(8), Income Tax Regs.
Accordingly, on the basis of all of the facts and circumstances, the Court concludes that petitioner was not engaged in tournament fishing with an actual and honest profit objective during the years in issue. [17]
Substantiation
We are satisfied that petitioner adequately substantiated the deductions he claimed for depreciation, insurance, and interest expense. However, because we have concluded that petitioner did not have the requisite profit objective necessary to permit the deduction of a business loss, petitioner is entitled to deductions related to the fishing activity only as provided in section 183(b). Because petitioner did not itemize deductions during the years in issue, it would appear that the deductions for *241 interest expense which he substantiated will not affect taxable income other than as an offset against gross income from the tournament fishing activity. See secs. 183(b)(1), 163(d)(6); sec. 1.183-1(b)(1), Income Tax Regs.
Additions to Tax
Respondent determined additions to tax under section 6653(a)(1)(A) and (B) for 1987, and under section 6653(a)(1) for 1988. Each of these additions to tax applies to underpayments resulting from negligence or disregard of rules or regulations. Petitioner bears the burden of proof as to these additions. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Although we have sustained respondent's determination that petitioner did not have an honest and actual profit objective, we find, under the circumstances of this case, that petitioner was not negligent, but that he made a reasonable and good faith error in applying of the law to the facts of this case. Accordingly, we do not sustain respondent's determination with respect to the additions to tax for negligence. To reflect the foregoing, as well as concessions by the parties, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent conceded the self-employment tax adjustment and petitioner conceded that he is liable for the addition to tax for delinquency.↩
3. Petitioner does, however, hold an impressive array of certifications in mechanical repairs.↩
4. Preparations for a typical tournament began at 3:00 A.M., and the competition started at sunrise.↩
5. Petitioner did not, however, claim all expenses to which he felt he was entitled.↩
1. As noted below, petitioner failed to report at least $ 880 of income for this year.↩
6. It is not clear from the record whether he attended on behalf of a sponsor.↩
7. Pre-fishing involves fishing in the lake in advance of a tournament in order to gauge the best approach to adopt for the tournament.↩
8. A fishing license, which requires payment of a fee, is required to fish in the State of Texas.↩
9. A guide is essentially a person whom a State certifies to demonstrate for others, for a fee, how best to fish a given lake and how to use the necessary equipment.↩
10. Petitioner's mechanical skills were particularly important in this regard because he was able to ensure that his boat would perform well enough to allow him to fish as long as possible, thus giving him a competitive advantage, since competitors were obliged to return to a weigh-in point at a specific time.↩
11. Apparently, much tournament fishing has been dedicated to bass fishing since approximately 1980.↩
12. The person or pair catching the biggest bass would not necessarily win first prize because first prize is based on the cumulative weight of the fish caught.↩
13. The parties resolved the substantiation issue before trial, except for depreciation, insurance, and interest expenses.↩
14. We note that petitioner's counsel did an admirable job of presenting the facts available to him in the light most favorable to his client. In our view, however, the totality of the facts favors respondent's position.↩
15. Although the year 1990 is not in issue, the manner in which petitioner has consistently maintained his records is relevant to our discussion.↩
16. In 1990, petitioner reported no gross income from the tournament fishing activity and claimed a $ 1,351 loss.↩
17. We note that in the notice of deficiency, respondent disallowed all of petitioner's deductions related to the fishing activity.↩